Glenn Wallace **FITZGERALD**, Petitioner,

v.

C. C. **PEYTON**, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 69–C–8–H.

United States District Court
W. D. Virginia,
Harrisonburg Division.

July 22, 1969.

W. Luke Witt, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

This case comes before the court on a petition for a writ of habeas corpus filed *in forma pauperis* by Glenn Wallace Fitzgerald, a state prisoner, pursuant to 28 U.S.C. § 2241. The petition was originally filed in the United States District Court for the Eastern District of Virginia and was ordered transferred to this court by order dated March 7, 1969.

Petitioner is currently serving a five year sentence pursuant to his conviction for statutory burglary after trial in the Circuit Court of the County of Culpeper, Virginia, on October 24, 1966. However, petitioner is attacking a sentence of twelve months in jail for statutory burglary imposed by Circuit Court of Augusta County, Virginia, on July 13, 1967. This court may entertain a petition which challenges a sentence which is to begin in the future. Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968).

The petition for a writ of habeas corpus was filed in this court on March 7, 1969. No petition has been filed in the state courts. However, the claim which the petitioner presents to this court is the same as that which he pressed on direct appeal from his conviction, and thus it has been adjudicated by the highest courts in the state. This is sufficient to permit a petitioner for a writ of habeas corpus to seek federal redress without the necessity of seeking successive rounds in state court litigation. Edmondson v. Warden, Maryland Penitentiary, 335 F.2d 608 (4th Cir. 1964). Thus the petitioner has exhausted his available state remedies within the provisions of 28 U.S.C. § 2254, as interpreted by Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and as a result, is properly before this court.

Petitioner cites five grounds for the filing of this writ of habeas corpus. They are:

1. That the lower court erred in admitting the fingerprint evidence because this evidence represented the fruit of an illegal confession.

2. That the lower court erred in granting Instruction B tendered by the Commonwealth relating to punishment.

3. That the lower court erred in granting Instruction C tendered by the Commonwealth relating to reasonable doubt.

4. That the lower court erred in overruling the defendant's motion to have the charge against him dismissed at the end of the Commonwealth's

case because the evidence of the Commonwealth failed to show beyond a reasonable doubt that the defendant was guilty of the crime charged.

5. That the lower court erred in overruling the defendant's motion to set aside the verdict of the jury as contrary to the law and the evidence.

On the night of August 8, 1966, Jay's Restaurant in Augusta County was broken into and entered. The entry was accomplished by the breaking of a glass window. Petitioner's fingerprints were discovered in the restaurant on pieces of broken glass and on a cigar box in which rolls of pennies were kept. The evidence is not clear whether any rolls were taken from this box, but money was taken from a milkshake cup. Also, between four to six cases of beer were taken.

Petitioner claims that his fingerprints were matched up with those on file at the Federal Bureau of Investigation in Washington, D. C. by the use of an illegal confession. Petitioner previous to the time of his trial had been a paid informer for the Staunton police. The record from petitioner's trial shows that petitioner called Officer Bocock of the Staunton Police Department and requested a meeting with him. At this time, petitioner was in the Culpeper County Jail on charges there. Officer Bocock and Deputy Sheriff Hamilton from Augusta County interviewed petitioner on August 16, 1966, pursuant to petitioner's request. Both Bocock and Hamilton testified that petitioner was advised of his rights. Specifically, they advised him that he had the right to remain silent, that anything he said could be used against him in a court of law, that he had a right to an attorney and if he could not afford one, one would be appointed. Bocock, Hamilton and the petitioner have all testified that petitioner was not given a reward for testifying at this time and that no reward was anticipated. Petitioner was questioned at this time about numerous crimes in the City of Staunton

and Augusta County. Concerning the breaking and entering of Jay's Restaurant, petitioner testified that he and Clarence Conner went to Jay's Restaurant on the night in question. Petitioner told them that Conner broke into the restaurant while he remained in the car. Hamilton testified that petitioner had been under investigation for about three or four months on a series of break-ins. This suspicion plus the story related to Hamilton by the petitioner were sufficient reasons for Hamilton to send petitioner's name to the FBI to determine if petitioner's fingerprints matched those on the cigar box and pieces of broken glass. Petitioner claims that Rhea, the Commonwealth's Attorney for Augusta County, promised petitioner on August 18, 1966, that if petitioner would make a statement, Rhea would not use any statements he made at that time against him. Rhea stated to the trial court that nothing from the statements of August 18, 1966 had been used against the petitioner and that the August 18, 1966 statement was not the basis for sending petitioner's name to the FBI on the fingerprint check. Rhea's statement is supported by the testimony and nothing was offered into evidence to the contrary. R. E. Ranels, a Fingerprint Examiner for the FBI, testified at the trial that the fingerprints of petitioner matched those found on the box and glass. A jury found petitioner guilty and sentenced him to twelve months in jail.

It is clear that the August 16, 1966 statement was voluntary as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Petitioner was advised of his rights and made an intelligent waiver of them. No promises, inducements, or threats were made in order to obtain petitioner's statements. Petitioner was in fact the one who caused this interview to be instituted. The statements made on August 18, 1966 were shown to have no connection with petitioner's conviction. Since the August 16, 1966 statements were entirely voluntary and the August

18, 1966 statements were not connected with this case, there was no fingerprint evidence admitted at petitioner's trial which was the fruit of an illegal confession.

The writ of habeas corpus is apparently sought here under U.S.C. § 2241 (c) (3) on the grounds that "He (petitioner) is in custody in violation of the Constitution or laws or treaties of the United States." If the alleged errors in the state trial did not deprive the petitioner of any constitutional rights, the petitioner is not entitled to any relief by a habeas corpus proceeding in the federal courts. In Grundler v. State of North Carolina, 283 F.2d 798, 802 (4th Cir. 1960) the court held:

> It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. The role of a federal habeas corpus petition is not to serve as an additional appeal.

■■ The granting of Instructions B and C by the trial court raises no constitutional issue. These instructions appear to be proper and certainly no fundamental fairness or specific constitutional protection has been impugned or infringed by the granting of these instructions. Instructions B and C were read to the jury as follows:

> The Court instructs the jury that if you find the defendant guilty, it is the duty of the jury to impose such punishment as you consider to be just under the evidence and within the limits stated in the Court's instructions. You are not to concern yourselves with what may happen— may afterwards happen.

> The Court instructs the jury that while the Commonwealth must prove the guilt of the accused beyond a reasonable doubt, this does not mean proof to a point of mathematical certainty. If the jury has an abiding conviction of the truth to the charge, then they are satisfied beyond a reasonable doubt and must convict the accused. A reasonable doubt must be based upon the evidence. It must not be an arbitrary doubt without evidence to sustain it. It must be a serious and substantial doubt in order to warrant an acquittal. It must be a doubt of material facts necessary for the jury to believe to find a verdict of conviction, and not a doubt of immaterial and non-essential circumstances. A doubt engendered by sympathy or by a dislike to accept the responsibility of convicting the accused is not a reasonable doubt.

The last two contentions, four and five, do not present proper subjects for review by this court on a habeas corpus petition. The weight and sufficiency of the evidence were determined by the jury. This court can find no fundamental unfairness in violation of petitioner's rights under the Constitution in this case.

For the foregoing reasons the petitioner has failed to convince this court that he is entitled to relief based on his claim and it is accordingly adjudged and ordered that the writ be denied and the petition dismissed.

The clerk is directed to send a copy of this opinion and judgment to the petitioner and to the respondent.